STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2024 CA 0024

BRADY BASS

VERSUS

DISA GLOBAL SOLUTIONS, INC.,
CONVENIENT CARE, L.L.C. D/B/A TOTAL OCCUPATIONAL MEDICINE,
RANDY B. BARNETT, D.O., AND PSYCHEMEDICS CORPORATION

JUL 2 4 2024

Judgment Rendered: _____

* * * * *

ON APPEAL FROM THE
NINETEENTH JUDICIAL DISTRICT COURT, DIVISION 23
IN AND FOR THE PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA
DOCKET NUMBER 661547

HONORABLE KELLY E. BALFOUR, JUDGE PRESIDING

* * * * *

Brian W. Harrell
Metairie, Louisiana

Attorney for Plaintiff-Appellant
Brady Bass


Amy C. Lambert
Ann M. Halphen
Leah C. Cook
Shelby G. LaPlante
Baton Rouge, Louisiana

Attorneys for Defendant-Appellee
Convenient Care, L.L.C. d/b/a
Total Occupational Medicine


**BEFORE: THERIOT, PENZATO, and GREENE, JJ.**

**GREENE, J.**

Brady Bass, the plaintiff in this suit, appeals a summary judgment dismissing his claims against Convenient Care, L.L.C. d/b/a Total Occupational Medicine (TOM), a drug testing collection facility. After review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Bass was employed by Coastal Corrosion Control, Inc. (Coastal) as an onshore laborer. In January 2017, Coastal directed Mr. Bass to present to TOM for employment-related urine and hair sample drug testing. Mr. Bass's urine test was negative, but his hair sample test returned a positive result for marijuana use. According to Mr. Bass, the positive result for marijuana was a false positive, which ultimately negatively impacted his ability to maintain employment in the petrochemical industry.

Mr. Bass filed this suit against TOM; DISA Global Solutions, Inc. (DISA), Coastal's third-party drug test administrator; and Psychemedics Corporation (Psychemedics), the laboratory that performed the positive hair sample test. He alleged the defendants negligently mishandled his hair sample and conducted the drug test in an unsanitary and contaminated environment, resulting in the false positive drug test result for marijuana.[1] Mr. Bass alleged TOM collected the hair sample under the direction of DISA-trained-and-managed employees at TOM's clinic and then sent the hair sample to Psychemedics for chemical analysis. Mr. Bass also alleged the defendants defamed him by reporting and publicizing the alleged false positive drug test result to national drug testing databases, which prevented him from finding employment and caused him humiliation and embarrassment. Mr. Bass sought damages resulting from the false positive drug test, including lost employment, lost wages, lost benefits, loss of enjoyment of life, defamation, and emotional pain and suffering.

Specifically as to TOM, Mr. Bass alleged: the TOM employee who collected his hair sample (later identified as Matthew Guarisco) did so in an unsterile, disorganized, and unsanitary area while using unsterile collection equipment, which likely led to his hair sample

---

[1] In an original petition, Mr. Bass also named Randy B. Barnett, D.O., as a defendant. After the trial court dismissed Mr. Bass's claims against Dr. Barnett, Mr. Bass filed a first amended petition naming Jerome Cooper, D.O., as a defendant, identifying him as DISA's Medical Review Officer. Mr. Bass's claims against Dr. Cooper are not at issue in this appeal.

2

being mislabeled or otherwise contaminated; Mr. Guarisco violated Substance Abuse and Mental Health Services Administration[2] (SAMHSA) regulations by failing to have Mr. Bass initial the specimen container housing his hair sample; and TOM committed negligence *per se* by violating statutory duties contained in the Louisiana Drug Testing Statute (La. R.S. 49:1001, *et seq.*), SAMHSA regulations, and PHMSA regulations.[3]

The three defendants separately filed motions for summary judgment seeking dismissal of Mr. Bass's claims. This Court affirmed a summary judgment dismissing Mr. Bass's claims against Psychemedics, finding Mr. Bass failed to present evidence of Psychemedics's negligence, was not entitled to assert a negligence *per se* claim under certain statutes and regulations, and failed to present evidence of Psychemedics's unprivileged publication to a third party to support his defamation claim. *Bass v. DISA Global Solutions, Inc.*, 2020-0071 (La. App. 1 Cir. 12/30/20), 318 So.3d 909, *writ denied*, 2021-00147 (La. 3/23/21), 313 So.3d 273 *(Bass I)*. This Court reversed a summary judgment dismissing Mr. Bass's claims against TOM and remanded for further proceedings, finding an expert's affidavit created disputed factual issues regarding the validity and integrity of TOM's collection process. *Bass v. DISA Global Solutions, Inc.*, 2019-1145 (La. App. 1 Cir. 6/12/20), 305 So.3d 903, 910, *writ denied*, 2020-01025 (La. 11/4/20), 303 So.3d 651 *(Bass II)*. And, this Court vacated a judgment denying DISA's motion for summary judgment and remanded due to the trial court's failure to rule on evidentiary objections before ruling on the motion. *Bass v. DISA Global Solutions, Inc.*, 2022-0957 (La. App. 1 Cir. 9/26/2022), 2022 WL 4463074.

In this appeal, we review a February 15, 2023 judgment granting TOM's second-filed motion for summary judgment and dismissing Mr. Bass's claims against TOM. In a related appeal, our Docket Number 2023 CA 1307, we review a February 24, 2023 judgment granting DISA's re-set motion for summary judgment and dismissing Mr. Bass's claims against DISA. On DISA's motion, this Court consolidated this appeal with Docket Number 2023 CA 1307 for oral argument and submission only.

---

[2] *See* La. R.S. 49:1001(8).

[3] PHMSA appears to be the United States Department of Transportation Pipeline and Hazardous Materials Safety Administration. *See Bass v. DISA Global Solutions, Inc.*, 2019-1145 (La. App. 1 Cir. 6/12/20), 305 So.3d 903, 910, *writ denied*, 2020-01025 (La. 11/4/20), 303 So.3d 651.

In a single assignment of error, Mr. Bass contends the trial court erred in granting TOM's motion for summary judgment and dismissing his claims against TOM. Mr. Bass argues the trial court ignored evidence of Mr. Guarisco's negligence, of possible sample contamination, Mr. Bass's later-administered negative drug test,[4] and an "accumulation of evidence" creating genuine issues of material fact. We note that Mr. Bass does not assign error to nor discuss the trial court's dismissal of his claims against TOM for invasion of privacy, defamation, and negligence *per se*, and as such, we consider these issues abandoned. *See* Uniform Rules – Courts of Appeal, Rule 2-12.4(B)(4).[5]

## DISCUSSION

### Summary Judgment

An appellate court reviews the grant or denial of summary judgment *de novo* under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. *Bass I*, 318 So.3d at 916; *Bass II*, 305 So.3d at 906. A court shall grant a motion for summary judgment if the motion, memorandum, and admissible supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. *See* La. C.C.P. art. 966(A)(3) and (4).[6] The summary judgment movant maintains the burden of proof. La. C.C.P. art. 966(D)(1). Nevertheless, if the movant will not bear the burden of proof at trial on the issue before the court on the motion, his burden is satisfied by pointing out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* Thereafter, the adverse party must produce factual support sufficient to establish he will be able to satisfy his evidentiary burden of proof at trial. *Id.* If the adverse party fails to meet this burden,

---

[4] On January 27, 2017, eleven days after Mr. Bass's first hair sample was taken, J&B Industries collected a different sample of Mr. Bass's hair, which returned a negative result for marijuana.

[5] Notwithstanding Mr. Bass's failure to raise these issues, we note that, in *Bass I*, this Court determined the trial court properly dismissed Mr. Bass's defamation claim therein, because there was no unprivileged publication to a third party and also properly dismissed his negligence *per se* claims because the Louisiana Drug Testing statute, Department of Transportation regulations, HIPAA, SAMHSA, and PHMSA guidelines did not apply to Mr. Bass's claims. *See Bass I*, 318 So.3d at 921-923. *Accord Russo v. International Drug Detection, L.L.C.*, 18-93 (La. App. 5 Cir. 5/30/18), 250 So.3d 1100, 1104 (finding SAMHSA regulations do not apply to hair drug testing and the Louisiana Drug Testing statute did not apply to a plaintiff employed in the exploration, drilling, or production of oil and gas in Louisiana).

[6] The Legislature recently amended La. C.C.P. art. 966, but those amendments are not applicable to this appeal. *See* 2023 La. Acts No. 317, §1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, §1 (eff. Aug. 1, 2023); *Jones v. Illinois Cent. R.R. Co.*, 2023-0457 (La. App. 1 Cir. 11/3/23), 378 So.3d 104, 106, n.2. Accordingly, we apply the version of La. C.C.P. art. 966 in effect on February 6, 2023, the date of the summary judgment hearing herein.

4

there is no genuine issue of material fact, and, if appropriate, the court shall render summary judgment against him. La. C.C.P. arts. 966(D)(1) and 967(B).

## Negligence

Because it is the substantive law that determines materiality in a summary judgment setting, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Bass I*, 318 So.3d at 917. Mr. Bass's claims against TOM are based on negligence and are subject to a duty/risk analysis. *See Id.* To prevail at trial, Mr. Bass would have the burden of proving: (1) TOM had a duty to conform its conduct to a specific standard (the duty element); (2) TOM's conduct failed to conform to the appropriate standard (the breach element); (3) TOM's substandard conduct was a cause in fact of Mr. Bass's injuries (the cause in fact element); (4) TOM's substandard conduct was a legal cause of Mr. Bass's injuries (the scope of duty element); and, (5) proof of actual damages (the damages element). *Id.*

Generally, under Louisiana law, a person has a duty to conform his conduct to the standard of care of an average reasonable man in like circumstances. *Bass I*, 318 So.3d at 917; *Bass II*, 305 So.3d at 907. Thus, for TOM to have breached a duty, it first must have owed a duty, and secondly, it must have acted unreasonably in collecting the hair sample from Mr. Bass. *Bass II*, 305 So.3d at 907. As conceded by TOM on appeal, a collector of a hair sample for drug testing purposes has a duty to maintain the integrity of the sample. *See Williams v. Gulf Coast Occupational Medicine*, Inc., 2015-1130 (La. App. 1 Cir. 2/26/16), 2016 WL 770376, *5, n.5, *writ denied*, 2016-0577 (La. 5/13/16), 191 So.3d 1056. Notwithstanding the collector's duty, a plaintiff alleging a collector's negligence still must show that the breach of that duty was the cause in fact of his injuries. *See Williams v. Gulf Coast Occupational Medicine*, 2022-1224 (La. App. 1 Cir. 2/10/23), 2023 WL 1945454. The question of whether a collector's negligence was the cause of a false positive drug test may be decided on a motion for summary judgment. *Id.*

TOM contends that the trial court correctly granted its motion for summary judgment, because Mr. Bass will be unable to prove the breach and cause in fact elements of his negligence claim. In opposition, Mr. Bass argues the summary judgment evidence establishes genuine issues of material fact as to whether Mr. Guarisco negligently collected

5

his hair sample, "which resulted in environmental contamination" of the sample. After *de novo* review, we conclude TOM is entitled to summary judgment, because Mr. Bass has failed to produce factual support sufficient to establish that he will be able to meet the cause in fact element of his burden of proof at trial.

### Cause in Fact

To establish cause in fact, a plaintiff must prove a cause and effect relationship between a defendant's conduct and the plaintiff's loss. The cause in fact test requires that "but for" the defendant's conduct, the plaintiff would not have sustained the injuries. *Pellerin v. Foster Farms, L.L.C.*, 54,829 (La. App. 2 Cir. 1/11/23), 354 So.3d 790, 796. Although the cause in fact inquiry is a factual determination best made by the factfinder, summary judgment may be appropriate when there is no evidence to show that the cause in fact test has been met. *Young v. Department of Transportation and Development*, 2020-0526 (La. App. 1 Cir. 12/30/20), 318 So.3d 887, 892.

In support of its motion for summary judgment, among other evidence, TOM filed the affidavit and report of Dr. Carl Selavka, a forensic scientist with experience in lab-based hair and urine drug testing. In preparing his report, Dr. Selavka reviewed lab results with supporting chain of custody files and analytical data showing three positive tests for marijuana on the hair sample Mr. Guarisco collected from Mr. Bass on January 16, 2017, Mr. Bass's original and amended petitions, and Mr. Bass's deposition testimony. In his report, Dr. Selavka noted Psychemedics's first positive test result. He then explained that, in such a case of an unexpected positive test, due to specific factors related to hair morphology and drug incorporation, and their impact on hair drug testing interpretation, some laboratories include aggressive wash procedures in their re-test protocol to insure that no common environmental causes could lead to another positive result. He noted that Psychemedics and Omega, a second laboratory, performed this type of aggressive wash procedure of Mr. Bass's hair sample before re-testing it, and the hair sample twice again tested positive for marijuana. Dr. Selavka then opined,

> [E]ven if hair collections by "ungloved Collectors" involve "dirty scissors" and "dirty tables" ...[,] Psychemedics and Omega employ extensive, aggressive wash steps prior to [follow-up] tests which [remove] any environmental drugs from the sample. **No external contamination contributed to the [hair drug test] Positive Marijuana result reported for Mr. Bass.** (Emphasis in original.)

6

This summary judgment evidence points to an absence of support for the cause in fact element of Mr. Bass's claim. That is, with Dr. Selavka's report, TOM has shown that, even if Mr. Guarisco breached his duty to maintain the integrity of Mr. Bass's hair sample (by negligently collecting the hair sample), such is not proof that breach of that duty was the cause in fact of the positive hair sample test. At this point, the burden shifted to Mr. Bass to produce factual support sufficient to establish that he could prove cause in fact at trial. *See* La. C.C.P. arts. 966(D)(1) and 967(B).

In opposition to TOM's motion, Mr. Bass points to summary judgment evidence that focuses on the integrity of TOM's collection process and the reliability of hair sample drug testing, not on causation. Specifically, Mr. Bass references depositions and affidavits of Andrew Easler, Mr. Bass's expert in drug testing collection procedure, and of Daniel Buffington, Mr. Bass's pharmacology and toxicology expert.[7] In his deposition, Mr. Easler opined that Mr. Guarisco's collection process was flawed, primarily because he failed to sanitize the collection table in Mr. Bass's presence before collecting Mr. Bass's hair sample. However, Mr. Easler specifically testified that he was giving no opinion as to whether Mr. Bass's hair sample was somehow contaminated because it touched the table; he stated that this causation inquiry was better addressed by a pathologist, and he would leave the "science of drug testing" to scientists. Similarly, in his deposition, Mr. Buffington stated that he was not taking a position as to how Mr. Bass's hair was contaminated and admitted that he had no facts to support a finding that Mr. Bass's hair sample was contaminated at TOM's facility or at either testing laboratory.[8] Rather, the focus of Mr. Buffington's opinion was

---

[7] Mr. Bass also filed the affidavit of Dana Way, a forensic scientist and chemist, in opposition to TOM's motion for summary judgment. After Mr. Bass filed his opposition, TOM filed a reply memorandum objecting to Ms. Way's affidavit as inadmissible summary judgment evidence. TOM argued the trial court should not consider Ms. Way's expert opinion regarding TOM's sample collection process. At the summary judgment hearing, the trial court heard argument on the issue and then granted TOM's objection, finding Ms. Way's affidavit failed to comply with La. C.C.P. art. 967 and contained conclusory opinions based on incomplete facts.

After Mr. Bass appealed, TOM filed a motion with this Court to strike Ms. Way's affidavit from the appellate record. This Court denied the motion but noted that physical inclusion of the affidavit in the appellate record would not necessarily result in this Court's consideration of the affidavit on the merits of TOM's motion for summary judgment. *Brady Bass v. DISA Global Solutions, Inc., et al.*, 2024 CA 0024 (La. App. 1 Cir. 3/13/24) (unpublished action). Because we affirm this summary judgment on a lack of evidence regarding the cause in fact element of Mr. Bass's claim, we need not address Ms. Way's affidavit, which only addresses alleged errors in TOM's collection process and contains no discussion or opinion regarding the cause in fact of Mr. Bass's positive drug tests.

[8] In an earlier affidavit included in the summary judgment record, Mr. Buffington attested that Mr. Bass's positive hair sample tests "more likely than not reflect external contamination at the point of collection," but gave no factual basis.

7

that, in general, hair drug testing is unreliable and of limited clinical utility. Specifically as to Mr. Bass, Mr. Buffington opined that the reliability of Mr. Bass's thrice-positive hair test was questionable given that another hair sample tested negative only eleven days after Mr. Guarisco took the first sample. However, the reliability of hair sample drug testing is not at issue in this appeal, as Mr. Bass has made no such claim in this case. Thus, Mr. Buffington's opinion regarding hair sample drug testing does not present a material issue for this Court's review. *See Seal v. Louisiana Farm Bureau Mutual Insurance Company*, 2021-0988 (La. App. 1 Cir. 3/16/22), 341 So.3d 659, 662 (For summary judgment purposes, a fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute.)

Mr. Bass's summary judgment evidence primarily focuses on Mr. Guarsico's alleged negligence in collecting his hair sample, *i.e.*, that Mr. Guarisco collected the sample in an unsterile, disorganized, and unsanitary area while using unsterile collection equipment, "which likely led" to his hair sample being contaminated. But, Mr. Bass has provided this Court with no evidence to show that any of Mr. Guarisco's conduct, even if true, "likely led" to contamination of Mr. Bass's hair sample, somehow turning a negative hair sample test result into a false positive result for marijuana. Proof of negligence is not a substitute for evidence of causation. *See Jenkins v. Big City Remodeling*, 515 S.W.3d 843, 852 (Tenn. 2017). *See Williams*, 2023 WL 1945454 at *1 (granting summary judgment on appeal based on plaintiff's failure to produce sufficient evidence to demonstrate that he would be able to meet his burden of proving the defendant's negligence caused his damages); *also see Henry v. Ahern*, 2021-0438 (La. App. 4 Cir. 2/9/22), 335 So.3d 871, 882 (affirming summary judgment because plaintiff failed to establish a causal connection between the defendant's actions and the plaintiff's alleged loss) and *Smeltzer v. Medtox Laboratories*, 24 I.E.R. Cas. (BNA) 1555, 2006 WL 2095468, *4 (D. Minn. 2006), *aff'd*, 226 Fed.Appx. 613 (8th Cir. 2007) (affirming summary judgment because plaintiff failed to prove a re-test of his urine sample would have or could have produced a result different from the original test).

Mere speculation will not defeat a motion for summary judgment, and conclusory allegations, improbable inferences, and unsupported speculation are insufficient to create a genuine issue of material fact. *See Wolfe v. Quad-Area Community Action Agency, Inc.*,

8

2022-0203 (La. App. 1 Cir. 9/16/22), 352 So.3d 992, 995, *writ not considered*, 2022-01625 (La. 1/11/23), 352 So.3d 562. Causation must be established beyond the point of speculation. *Smeltzer*, 2006 WL 2095468 at *4. Thus, because Mr. Bass has provided no evidence to support his speculative allegation that Mr. Guarisco's negligent collection of his hair sample caused a false positive drug test for marijuana, we conclude the trial court correctly granted summary judgment in this case. Accordingly, we need not address TOM's argument that summary judgment is also appropriate as to the breach element of Mr. Bass's negligence claim. *See Williams*, 2016 WL 770376 at *3 (noting that a negative answer to any of the inquires of the duty-risk analysis results in a determination of no liability).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's February 15, 2023 judgment, granting the motion for summary judgment filed by Convenient Care, L.L.C. d/b/a Total Occupational Medicine, and dismissing all of Brady Bass's claims against Convenient Care, L.L.C. d/b/a Total Occupational Medicine. We assess costs of this appeal to Brady Bass.

**AFFIRMED.**